**RECORD NO. 17-4488**

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JAMES MICHAEL FARRELL,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT GREENBELT
HONORABLE ROGER W. TITUS PRESIDING

**REPLY BRIEF OF APPELLANT
JAMES MICHAEL FARRELL**

Barry Coburn
Coburn & Greenbaum, PLLC
Second Floor
1710 Rhode Island Avenue, N.W.
Washington, DC 20036
(202) 643-9472
barry@coburngreenbaum.com

June 14, 2018                                    *Counsel for Appellant*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

THE GOVERNMENT'S STATEMENT OF THE FACTS ......................................1

ARGUMENT .............................................................................................................5

    Willful Blindness ..............................................................................................5

    Supplemental Jury Instruction Just Prior to Verdict ......................................10

    Obstruction-related Counts ............................................................................11

    Suppression ....................................................................................................12

    Sufficiency of the Evidence as to Money Laundering ..................................13

CONCLUSION ........................................................................................................14

CERTIFICATE OF COMPLIANCE .......................................................................14

CERTIFICATE OF FILING AND SERVICE ........................................................15

# TABLE OF AUTHORITIES

**Page**

## CASES

*United States v. Blair*,
    661 F.3d 755 (4th Cir. 2011) ................................................................................12

*United States v. Doss*,
    630 F.3d 1181 (9th Cir. 2011) ..............................................................................12

*United States v. Ebert*,
    1999 U.S. App. LEXIS 8453 (4th Cir. 1999) ..................................................6, 9

*United States v. Jinwright*,
    683 F.3d 471 (4th Cir. 2012) ..................................................................................9

*United States v. Lieberman*,
    1997 U.S. App. LEXIS 1057 (4th Cir. January 24, 1997) ..............................13

*United States v. Novak*,
    531 F.3d 99 (1st Cir. 2008) ...................................................................................13

*United States v. One 1973 Rolls Royce by & Through Goodman*,
    43 F.3d 794 (3d Cir. 1994) .....................................................................................5

*United States v. Wilkinson*,
    137 F.3d 214 (4th Cir. 1998) .................................................................................5

## STATUTES

None

## **THE GOVERNMENT'S STATEMENT OF THE FACTS**

In prosecuting Farrell, the government sought to criminalize his advocacy for clients and his efforts to secure legal representation for individuals targeted by the government during its investigation and prosecution of what it calls the Nicka Organization. The government, however, did not establish the necessary predicate for administration of a willful blindness instruction; did not elicit legally sufficient evidence to sustain Farrell's convictions; and does not establish that the supplemental instruction administered to by the district court, after an extended period of jury deliberation, was not coercive.

The government suggests that Farrell's record-keeping practices demonstrate an attempt to conceal, but these practices are equally consistent with a habit of sloppy record-keeping, particularly given that the government never refuted testimony from Farrell's office staff that he was an habitually sloppy record-keeper. Nor did the government elicit, through expert or other testimony, that a lawyer's association, in office paperwork, of funds received with the client those funds were supposed to benefit – as opposed to the person who provided the funds – was inappropriate, at odds with normal practice or reflected an attempt to conceal anything.

According to the government, "trial evidence proved conclusively that the defendant did represent Nicka [at the time of the government's investigation of the

1

Nicka Conspiracy] – a fact not really disputed by the defendant." Government's Brief at 5 n.2. In fact, there is no record evidence for this proposition. In support of it, the government relies upon page 26 of our brief, where we referenced an argument the government made during closing argument, and JA 1260 and 2626, neither of which provides a scintilla of support for this proposition. Government's Brief at 5 n.2. The government asserts, "Documents found during the execution of a warrant at Farrell's office reflected Nicka was a client. JA 1243." On that page, Mr. Farrell's assistant, Amy Pantano, on direct examination, references a document showing that Mr. Farrell's file for his far earlier, unrelated representation of Nicka was opened on March 11, 1999. JA 1243. The prosecutor then asks, "Is there a closed date on that file," to which Ms. Pantano replies, "No." *Id.* This is the foundation for the government's contention that Mr. Farrell represented Nicka during its instant investigation, and it is wholly insufficient.

While Farrell represented Nicka in the past, there was no record evidence that Farrell represented Nicka in connection with the federal charges brought against Nicka in the United States District Court for the District of Maryland. Farrell did represent Forman in connection with the early stages of the government's investigation and prosecution of the Nicka Organization. After representing Forman at Forman's initial bail hearing in Pennsylvania, Farrell

2

arranged for other counsel at Forman's first appearance in Maryland. Farrell continued to meet with Forman and advise him as the matter proceeded.

In its attempt to demonstrate that Farrell was acting illegally as "house counsel" for the Nicka Organization, the government references a text conversation between Marcantoni and Harryman on January 11, 2011, during which Marcantoni states to Harryman:

> They r putting as much pressure as they can. We will get ur time down. Tell Mike to do whatever he can and we'll pay him[.]

According to the government, "Harryman identified "Mike" as Farrell and and "we" as the Nicka Organization that would pay for the legal services. JA 745, 751." In point of fact, however, the "Nicka Organization" is never mentioned on either of the cited pages. The closest reference is on page 751, where the following colloquy occurs between Marcantoni and the prosecutor:

> Q.    So when you say "we'll pay him," you understood "we" to be Mr. Marcantoni and the others involved in the marijuana business?
>
> A.    Yes, ma'am.

The government asserts: "Farrell threatened Harryman, stating it would be best to go with the collapsed defense than "for someone to come and see you. JA 757." Aside from Harryman's testimony about his subjective reaction, there was, however, no actual evidence introduced to the effect that this was a threat from Mr.

3

Farrell, rather than a factor that Mr. Farrell was suggesting that Harryman should consider as a matter of his own self-interest.

The government asserts, with respect to funds provided by Farrell to Forman, "Farrell wrote in one text message that 'I received a positive response waiting on execution,' meaning that Nicka had sent the cash. JA 1770." The only evidence proffered, however, for the proposition that Nicka had been the source of the cash was Forman's testimony that this was his "understanding." JA 1770. There was an absence of substantive evidence produced by the government of Mr. Farrell receiving cash from Nicka or anyone on behalf of Nicka.

According to the government:  Forman and Farrell "did not discuss payment[,] which did not surprise Forman because it was his understanding from Nicka that he would not have to pay if he utilized Farrell's services.  JA 1700." Government's Brief at 19. That, however, is not what Forman testified to at trial. He stated his "understanding that Matt's conversations and had previous conversations that I didn't need to worry about any kind of legal fees." JA 1700. He did not, however, say that this understanding was predicated on using Farrell's services.

The government asserts that "Farrell showed up at the jail to represent Phillips even though Phillips never contacted him. JA 969." That, however, is not quite what the transcript says. Phillips actually testified that Farrell showed up at

4

the jail to visit Phillips and subsequently represented him in his state charges, but does not say that this was the purpose of Farrell's appearance at the jail. JA 969.

## ARGUMENT

Willful Blindness

The highly generalized, nonspecific sweep of the government's theory of money laundering is evident from the first sentence of its summary of argument, where it refers to Farrell's allegedly "numerous illegitimate financial transactions," with respect to which he kept "inaccurate documentation." Government's Brief at 27. Broad pejorative characterizations of a defendant's monetary transactions and poor record-keeping do not establish money laundering.

The government was required to show Farrell actually knew that the money at issue constituted the proceeds of unlawful activity. *United States v. Wilkinson*, 137 F.3d 214, 221 (4th Cir. 1998). The government sought to prove this element by tarring Farrell with as much evidence of the Nicka Organization's drug-related activities as the district court would allow. As the Third Circuit has commented, however, "if an indictment or other serious accusation is enough, by itself, to create knowledge of a high probability of the taint that would trigger a duty to investigate the source of a fee, attorneys would be reluctant to take on any clients accused of drug trafficking." *United States v. One 1973 Rolls Royce by & Through Goodman*, 43 F.3d 794, 811 n. 17 (3d Cir. 1994). The charges against Nicka and others did

5

not prove Farrell knew that any money he received were the proceeds of unlawful activity.  Nor did evidence of Nicka and his colleagues' drug distribution activities, absent knowledge that Farrell was contemporaneously aware of them and of the fact that they were the source of funds.

    The government never acknowledges nor comes to grips with the four-part test that must be met in this Court to justify a jury instruction as to willful blindness.  *See United States v. Ebert,* 1999 U.S. App. LEXIS 8453 at *32-33 (4th Cir. 1999).  The government relies on Farrell's boast to a client that he "knew everything" about the government's investigation, despite the fact that this assertion by Farrell does not connote guilty knowledge of anything.  Government's Brief at 30.  The government highlights Farrell's statement to Forman that Farrell knew he was "at risk," Government's Brief at 30, even though such a statement could mean just about anything, including concern that one is an unjustified target of an investigation.  It does not support any of the four *Ebert* criteria for a willful blindness instruction.  Farrell's interactions with a number of members of the Nicka Organization, upon which the government also relies, Government's Brief at 30-31, is of similar lack of import with respect to the application of the *Ebert* factors.  The government relies upon the pendency of its *own investigation* to justify an inference of guilty knowledge on Farrell's part, even though this, too, does not address the requirements set forth in *Ebert*:

6

> With one after another of Nicka's associates being questioned about drug trafficking, it is reasonable to infer Farrell had a belief about Nicka's real business.

Government's Brief at 31.

With respect to Farrell's supposed deliberate avoidance of knowledge (the second factor in *Ebert*), the government contends that Farrell provided "untraceable cash to individuals involved in an investigation of his present and former clients, and did not keep accurate records regarding his receipt of that cash." Government's Brief at 31. The evidence, in fact, shows that no attempt was made to conceal the provision of cash to other lawyers and to Phillips, nor did it establish that Farrell's records – which associated payments with the clients for whom the cash was used as a fee – were "inaccurate." There was no evidence elicited as to the source of any cash provided by Farrell and no evidence that Farrell was willfully blind as to its origin.

The record shows that Farrell sent other lawyers letters overtly and specifically hiring them to represent individuals under investigation, and that he made no provable efforts to conceal the source of cash provided to them or to individual clients, such as Phillips. With respect to Farrell's provision of cash to Mr. Henry to represent Phillips, upon which the government relies (Government's Brief at 31), Farrell made no effort to conceal this transaction from anyone. The fact that Farrell's books list these payments under Phillips suggests only that they

7

were attributable to Phillips' legal fees, which suggests precisely the contrary of an intention to conceal them or their source. *See* Government's Brief at 31. Nowhere do these records state or suggest that the clients were *the source* of the funds. The same observation applies to Constantinides and Forman. *See* Government's Brief at 32. No evidence was elicited demonstrating an intention to conceal the fact that these funds came from a source other than the clients, nor was evidence presented demonstrating an intention to remain willfully blind as to an illicit origin of the funds.

The government goes so far as to cite – as support for a willful blindness instruction – our alleged assertion *at trial*, during our opening statement, that Farrell "knew absolutely nothing about Nicka's involvement in marijuana." JA 241-42. What we said during opening statement has nothing remotely to do with the existence or nonexistence of an evidentiary predicate supporting a willful blindness instruction. Further, we said no such thing. Examination of JA 241-42, the government's page reference supporting this assertion, is illuminating. The only thing remotely approaching support for the government's assertion is the following:

> I anticipate that the government will put – that [they] are going to seek to introduce actual drug evidence in this case despite the fact that there's absolutely not one shred of evidence that Mr. Farrell ever saw marijuana, touched marijuana, was in the same room with marijuana.

8

JA 241-42. This is quite some distance from an assertion that Farrell knew nothing about *Nicka's* involvement with marijuana. Similarly, according to the government, Farrell "continued this canard in closing argument, JA2705, even while admitting Farrell knew Nicka for decades, JA 2702." Government's Brief at 33. Again, the transcript citation does not support the government's argument. Instead, Farrell's counsel stated:

> [T]he government takes the position that, you know, what they refer to as the Nicka organization, made a lot of money selling marijuana. Probably so. But that, none of that makes Mr. Farrell guilty of money laundering. It doesn't establish the elements of those offenses beyond a reasonable doubt.

JA 2702. The government's incorrect citing of these passages is an indicator of the lack of an evidentiary predicate for the objected-to instruction.

The government contends that this Court, in *United States v. Jinwright,* 683 F.3d 471, 479-80 (4th Cir. 2012), rejected the contention – a contention reflected in a number of the cases we have cited – that there is a danger that administration of a willful blindness instruction can, in effect, lower the government's burden of proof. *Jinwright* says no such thing. Rather, it is consistent with *Ebert* and with this Court's other holdings concerning the particular circumstances when a willful blindness instruction is applicable. The government makes essentially no attempt to demonstrate that the requisite circumstances were proven here.

9

As to harmlessness, willful blindness was the government's principal theory as to money laundering and it referenced it repeatedly in closing argument. It is difficult to fathom how the trial court's erroneous sanctioning of this theory with a jury instruction ever could be harmless. Moreover, as discussed in our opening brief, here proof of Farrell's actual knowledge was absent.

<u>Supplemental Jury Instruction Just Prior to Verdict</u>

According to the government, the portion of the supplemental charge to which we objected was not an *Allen* charge. Government's Brief at 38-39. Further, according to the government, the jury's question about a potential deadlock, to which the district court responded, was "hypothetical." The government cites no authority for the proposition that a jury note phrasing a question about deadlock as a question rather than a statement means that nothing the trial court says in response could be deemed coercive, and we are unaware of the existence of any such authority.

The government further suggests that we did not object to this instruction. The government is in error on this point. We explicitly objected to the language at issue: "Your honor indicated it was in the interest of both parties that a verdict be reached and I just wanted to make sure that the objection I noted encompassed that language." JA 2841. The issue was raised at the trial level and ruled upon by the trial court and thus is properly before this Court. If the government is suggesting

10

that we were required to interrupt the district court mid-instruction to note our objection, it cites no authority for this proposition.

Obstruction-related counts

With respect to the Harryman DEA forfeiture forms, the government asserts:

> Farrell instructed Harryman that he could not disclose the source of the watch. JA 2884. In other words, Farrell wanted Harryman to lie.

Government's Brief at 43. There is an absence of evidentiary support for this contention, which reflects the government's apparent view that instructing a witness under investigation to act in his or her own interest and thereby protect him- or herself constitutes obstruction of justice. Farrell instructed Harryman that he should not disclose inculpatory information on the DEA forms, that he should make a conclusory assertion that he owned the seized property and he was entitled to its return and assert all available constitutional claims.

This is advocacy, not lying. The government does not point to any factual falsehood in the DEA forms with respect to which Farrell advised Harryman.

Similarly, with respect to Forman, the government contends that "Farrell corruptly persuaded Forman to lie." Government's Brief at 45. The evidence does not support this assertion. His advice to Forman to tell the government only what it already knew does not constitute advice to lie, particularly since Farrell did not have access to Forman's proffer letter and uncontested testimony at trial

11

established that a witness can cooperate in part, rather than agreeing to disclose everything she or he knows.

The government dismisses the significance of *United States v. Doss,* 630 F.3d 1181 (9th Cir. 2011), by noting, correctly, that it related to facts different from those presented here. The government never, however, comes to grips with the fundamental proposition, approved in *Doss,* that the underlying conduct had to be engaged in "corruptly" for convictions such as those at issue here to be sustained, and never points to any evidence that would justify such an inference with respect to any of the conduct at issue in this case, particularly given the lack of any proven factual falsity in the Harryman forfeiture forms, or any basis for concluding that Farrell advised Forman to lie to the government. *See United States v. Blair,* 661 F.3d 755 (4th Cir. 2011) (insufficient evidence for obstruction of justice conviction because statements did not have natural and probable effect of impeding justice).

<u>Suppression</u>

The government appears to believe that the undercover recordings of what Farrell thought were conversations with clients should not have been suppressed because they contained "highly incriminating statements." Government's Brief at 28. This characterization, of course, even if it were accurate, does not warrant denial of a motion to suppress statements.

12

The government gives the opinion in *United States v. Novak,* 531 F.3d 99 (1st Cir. 2008) the back of its hand, characterizing the language on which we rely as "dicta" and suggesting that the holding is "easily distinguishable because there the recordings involved an attorney and his *current* client." Government's Brief at 54-55 (emphasis in original). In point of fact, as we noted in our opening brief and which the government makes no attempt to refute, Farrell had a preexisting attorney-client relationship with Forman of long duration. Accordingly, the language in *Novak* is not distinguishable. Nor is it "dicta."

Sufficiency of the Evidence as to Money Laundering

The government's contentions regarding the nature of the evidence elicited concerning money laundering is not reconcilable with *United States v. Lieberman,* 1997 U.S. App. LEXIS 1057 (4th Cir. January 24, 1997). There this Court concluded that insufficient evidence existed that the defendant knew that the source of funds was illegal, and that he was not required to inquire as to the funds' source. Further,

> We know of no and the government has suggested no requirement that a lawyer or public accountant must know from where a client's money comes. . . . Hence concluding knowledge from merely not asking is outright speculation.
>
> In short, there has been no proof, let alone proof beyond a reasonable doubt, of anything about which Lieberman was willfully blind.

*Id.* at 4-5. The same conclusions should be reached here.

13

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that Mr. Farrell's convictions should be reversed.

>Respectfully Submitted,
>
>*/s/ Barry Coburn*
>
>_____
>Barry Coburn
>Coburn & Greenbaum PLLC
>1710 Rhode Island Avenue, N.W.
>Second Floor
>Washington, DC 20036
>(202) 643-9472
>barry@coburngreenbaum.com
>
>*Counsel for Appellant*

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because:

   The word count of this brief is 3,056.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   This brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word, Times New Roman, 14 point</u>.

>/s/  Barry Coburn
>Barry Coburn

14

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of June, 2018, I caused to be delivered a true and accurate copy of the foregoing Reply Brief of Appellant to the Clerk, United States Court of Appeals for the Fourth Circuit via hand delivery and electronically using the Court's CM/ECF system which will send notice of such filing to:

Sandra Wilkinson, Esq.
Assistant United States Attorney
6406 Ivy Lane 8th Fl.
Greenbelt, MD 20770

/s/ Barry Coburn
Barry Coburn

15